UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GAYLE REID,

     Plaintiff,

v.

GLADWIN COUNTY,

     Defendant.

Case No. 1:20-cv-
Hon. Thomas L. Ludington

---

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

---

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, GAYLE REID, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant, GLADWIN COUNTY, stating more fully as follows:

## COMMON ALLEGATIONS

1.    That at all times material hereto, Plaintiff is a resident of the County of Gladwin, State of Michigan.

2.     That Defendant is a County, located in and existing by virtue of the State of Michigan and operating under the entity, Gladwin County.

3.     That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

4.     That this Honorable Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.     That Plaintiff has a history of back problems and back surgery.

6.     That Plaintiff was hired as the part-time board secretary of Gladwin County on January 13, 2015.

7.     That subsequent to that time and on July 28, 2015, Plaintiff was made executive secretary by the board so that she could sit in and attend board meetings. Plaintiff is still working part-time.

8.     That on January 7, 2016, Plaintiff was given a wage increase from approximately $10 per hour to $15.43 per hour which would have been commensurate with the lowest full-time executive secretary employed by Gladwin County.

9.     That during the course of Plaintiff's employment and as more fully set forth herein, the Clerk of Gladwin County was Laura Brandon-Maveal and did

interfere with Plaintiff's FMLA leave and retaliated against Plaintiff along with the board of commissioners.

10.    That during the year 2016, Plaintiff had been requested to investigate orders placed for Gladwin County and discovered that there were many orders that had been placed for non-business items.  She also discovered and was requested to discover that the phone lines had been overcharged to the tune of approximately $1,292.00.  It is believed that Plaintiff's discovery of these issues caused friction between herself and the Clerk Brandon-Maveal.

11.    That in January of 2017, the Plaintiff was hired as a full-time employee.

## REQUEST FOR FMLA LEAVE

12.    That Plaintiff did request at that time FMLA leave which was granted by Defendant County.

13.    That beginning in June of 2018, Plaintiff began to have serious back conditions and spent approximately three days in and out of the ER, and that thereafter, and on July 23, 2018, Plaintiff had serious back surgery by neurosurgeon Dr. Gerald Schell.

14.    That on August 2, 2018, Dr. Schell put the Plaintiff on restrictions but returned her to work on August 5, 2018.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

15.    That subsequent thereto and on January 4, 2019, Dr. Schell again wrote a letter to the employer indicating that the Plaintiff was still on the same restrictions that he placed her on back in August of 2018.  It is subsequent to this letter that retaliation becomes volatile.

16.    That subsequent to that date and on April 22, 2019, Plaintiff requested FMLA intermittent leave.  She requests this and hands in formal federal paperwork to Laura Brandon-Maveal, Gladwin County Clerk, who tells her that she will not be provided intermittent leave.

17.    That furthermore, on April 22, 2019, a text exchange between Plaintiff and Maveal again reveal the fact that Plaintiff had been requesting FMLA intermittent leave.

18.    That in fact after this last request, various duties were removed from the Plaintiff which progressed throughout this time period, which are including but not limited to the following:

a.    Plaintiff is no longer allowed to open the mail for the board, even though this is something she had done since her inception;

b.    Plaintiff is required to prepare all agenda meetings and she is taken away duties concerning the finance agenda;

c.    Plaintiff was not allowed to schedule meetings any longer;

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

d.    Plaintiff is no longer given notices on a steady basis from the commissioner with regard to meetings to be held;

e.    Plaintiff was demoted to "board secretary';

f.    Defendants discovered that Plaintiff had tape recorded a meeting between herself and Maveal and was asked to erase it.  Plaintiff refused;

g.    Plaintiff was punished for not being able to pick up the mail and mocked for having restrictions which the Clerk Maveal exclaimed was the reason she could not pick up the mail;

h.    In November 2019, Plaintiff was told that she would no longer be allowed to attend any closed or executive sessions which had been her prior duties;

i.    Plaintiff was no longer allowed to generate or requested to generate letters or correspondence which had been her previous duties;

j.    In fact, and at a budget meeting, Defendant proposed that the Plaintiff's position would be cut to part-time as of December 12, 2019.  In fact, she was presented a letter on that same date cutting her time to part-time and removing all insurance benefits which would have provided her coverage.

k.    At the time said letter was provided to Plaintiff on December 12, 2019, Plaintiff was told it was due to budget cutting, although no other employees of the County were in fact reduced in their hours and in fact were given raises to most every department.

l.    Plaintiff was the only full-time position in fact in Gladwin County to be cut to part-time. As such, Plaintiff was no longer eligible for FMLA leave even though she was still under restrictions and wearing a bone stimulator every day because she had not had fusion of her bones. The Defendant chairman and vice-chairman of Gladwin knew of this fact.

m.    At the same time, the chairman and vice-chairman of Gladwin County asked how old the Plaintiff was and how long she planned to work and why she did not draw Social Security and use Medicare which could pay for her if she were off work.

19.    That it is believed that the Defendants have attempted and are attempting to constructively discharge the Plaintiff.

20.    That the Defendant's actions herein constitute interference and retaliation in violation of the Family and Medical Leave Act.

21.     That the Defendant's actions herein also constitute disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act.

22.     That as a direct and proximate result of this Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer severe economic damages, including but not limited to, lost wages, back pay, front pay, raises, bonuses, promotions, health, dental, vision, and/or life insurance benefits, investments, pension and/or retirement benefits, and any and all other compensation and fringe benefits, lost to Plaintiff along with an additional sum to offset any negative tax consequences of any recovery for same

23.     That Defendants actions constitute retaliation in violation of the Family and Medical Leave Act.

24.     That Defendants actions constitute retaliation in violation of the Michigan Persons with Disabilities Civil Rights Act.

25.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer severe noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, depression, anxiety, disruption of lifestyle, and denial of social pleasures.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

26.    That Plaintiff hereby claims reasonable attorney fees pursuant to MCL § 37.1606.

27.    That pursuant to 29 U.S.C. § 2617, Plaintiff hereby makes a claim for the following elements of damages directly and proximately caused by Defendants unlawful actions:

   (a)    Any wages, salary, employee benefits, or other compensation denied or lost to Plaintiff by reason of Defendants' violations of the FMLA;

   (b)    The interest on said wages, salary, employee benefits, and other compensation at the prevailing rate;

   (c)    An additional amount as liquidated damages equal to the above two sums;

   (d)    Reasonable attorney fees, reasonable expert witness fees, and other costs of this action; and

   (e)    Any such equitable relief as may be appropriate.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – RETALIATION IN VIOLATION OF THE
## FAMILY & MEDICAL LEAVE ACT

27.     That Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 26 of her Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

28.     That the FMLA provides that "[a]n employer is prohibiting from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act." 29 C.F.R. § 825.220(a)(2).

29.     That a causal connection is demonstrated, at least in part, by the Defendants comments to Plaintiff when requested intermittent leave, that "this never happened" dated April 22, 2019 (See Exhibit 1); and the subsequent text messages provided to the Plaintiff, violating Plaintiff's right to take intermittent leave pursuant to 29 U.S.C. § 2612(B)(1). (See Exhibit 2, text messages).

30.     That Defendant knew of Plaintiff's protected activity.

31.     That Defendants took materially adverse employment action against Plaintiff.

32.     That a causal connection exists between Plaintiff's protected activity and the materially adverse employment action.

33.     That a causal connection is demonstrated, at least in part, by the statements and actions of the Defendant to Plaintiff's demotion.

34.     That Defendants actions are materially adverse employment actions are pretextual in nature.

35.     That Defendants reasons for taking the material adverse employment action are not based in fact, did not actually motivate the decision, and/or were too insufficient to warrant the action.

36.     That Defendants actions constitute retaliation in violation of the Family and Medical Leave Act.

37.     That pursuant to 29 U.S.C. § 2617, Plaintiff hereby makes a claim for the following elements of damages directly and proximately caused by Defendants' unlawful actions:

   (a)   Any wages, salary, employee benefits, or other compensation denied or lost to Plaintiff by reason of Defendants' violations of the FMLA;

   (b)   The interest on said wages, salary, employee benefits, and other compensation at the prevailing rate;

   (c)   An additional amount as liquidated damages equal to the above two sums;

   (d)   Reasonable attorney fees, reasonable expert witness fees, and other costs of this action; and

   (e)   Any such equitable relief as may be appropriate.

   WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – RETALIATION IN VIOLATION OF THE
## FAMILY & MEDICAL LEAVE ACT

38.    That Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of her Common Allegations and paragraphs 28 through 37 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

39.    That the FMLA provides that "[a]ll persons (whether or not employers) are prohibited from discharging or in any other way discriminating against any person (whether or not an employee because that person has (i) [f]iled any charge, or has instituted (or caused to be instituted) any proceeding under or related to this Act; . . . [or] (iii) [t]estified, or is about to testify, in any inquiry or proceeding relating to a right under this Act." 29 C.F.R. § 825.220(a)(3)(i), (iii).

40.    That Plaintiff engaged in activity protected by the FMLA by filing and instituting a lawsuit under the FMLA and testifying in said proceeding.

41.    That Defendant knew of Plaintiff's protected activity.

42.    That a causal connection exists between Plaintiff's protected activity and adverse employment action as identified in the common allegations including removing her from her position of executive secretary, demoting her to board

secretary, and reducing her pay and taking away her health insurance and other benefits such as FMLA.

43.    That a causal connection is demonstrated, at least in part, by the close temporal proximity of Plaintiff's request for intermittent leave under FMLA and Plaintiff's demotion.

44.    That Defendants' reasons for taking the materially adverse employment action are pretextual in nature.

45.    That Defendants' reasons for taking the material adverse employment action are not based in fact, did not actually motivate the decision, and/or were too insufficient to warrant the action.

46.    That Defendants' actions constitute retaliation in violation of the Family and Medical Leave Act.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

47.    That Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 of her Common Allegations and paragraphs 28 through 37

of Count I, and paragraphs 38 through 46 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

48.     That the Elliott-Larsen Civil Rights Act makes it unlawful for an employer to fail or refuse to hire or recruit or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of age.  MCL 37.2202(1)(a).

49.     That at all times material hereto, Defendant constituted an "employer" as the term is defined by the Act.  MCL 37.2201(1).

50.     That Plaintiff was and is a member of a protected class by virtue of her age, sixty-seven (67) years old.

51.     That at all times material hereto, Plaintiff was and is qualified for the position of executive secretary.

52.     That Defendant took an adverse employment action as identified in the common allegations including removing her from her position of executive secretary, demoting her to board secretary, and reducing her pay and taking away her health insurance and other benefits such as FMLA.

53.     That the reasons proffered by the Defendant for its demotion and retaliation against the Plaintiff are pretextual in nature.

54.     That the proffered reasons by the Defendant for its actions against the Plaintiff in reducing her pay, reducing her hours, and taking away her benefits, title and position are either not based in fact or did not actually motivate their decision.

55.     That Defendant's actions constitute age discrimination in violation of the Elliott-Larsen Civil Rights Act.

56.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has experienced and will continue to experience economic damages, including, but not limited to, lost wages, back pay, front pay, raises, bonuses, health, dental, vision, and life insurance benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any other compensation and fringe benefits provided by Defendant along with an additional amount to offset any negative tax consequences of recovery.

57.     That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and will continue to suffer from severe non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

58.     That Plaintiff hereby claims the costs of this litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801(3) and MCL 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: January 21, 2020          By:   */s/ Victor J. Mastromarco, Jr.*
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, GAYLE REID, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all of the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: January 21, 2020          By:   */s/ Victor J. Mastromarco, Jr.*
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

**Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)**

**U.S. Department of Labor**

Wage and Hour Division



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

OMB Control Number: 1235-0003
Expires: 8/31/2021

## SECTION I: For Completion by the EMPLOYER

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: _Gladwin County - Laura Brandon-Maveal_
_HR 989-426-7357_

Employee's job title: _____ Regular work sche___

Employee's essential job functions: _____

_____

Check if job description is attached: _____

_Laura ~
Please fill out
Employer Portion ~
I am taking this
to the Doctor for
his portion + return
to me ~ Thank you ~
Gayle
This never happened
4-22-19_

## SECTION II: For Completion by the EMPLOYEE

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before
The FMLA permits an employer to require that you submit a timely, comple
support a request for FMLA leave due to your own serious health condition.
is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §
complete and sufficient medical certification may result in a denial of your !
employer must give you at least 15 calendar days to return this form. 29 C.F

Your name: _____
First                    Middle                    Last

## SECTION III: For Completion by the HEALTH CARE PROVIDER

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. § 1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: _____

Type of practice / Medical specialty: _____

Telephone: (_____)_____ Fax:(_____)_____

**PLAINTIFF'S
EXHIBIT
1**

tabbies

Form WH-380-E  Revised May 2015

PART A: MEDICAL FACTS

1. Approximate date condition commenced: _____

   Probable duration of condition: _____

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ___No ___Yes. If so, dates of admission:

   _____

   Date(s) you treated the patient for condition:

   _____

   Will the patient need to have treatment visits at least twice per year due to the condition? ___No ___Yes.

   Was medication, other than over-the-counter medication, prescribed? ___No ___Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ___No ___Yes. If so, state the nature of such treatments and expected duration of treatment:

   _____

2. Is the medical condition pregnancy? ___No ___Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition: _____ No _____ Yes.

   If so, identify the job functions the employee is unable to perform:

   _____

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   _____

   _____

   _____

   _____

   _____

   _____

   _____

CONTINUED ON NEXT PAGE

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery?  ___No  ___Yes.

    If so, estimate the beginning and ending dates for the period of incapacity: _____

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition?  ___No  ___Yes.

    If so, are the treatments or the reduced number of hours of work medically necessary?
___No  ___Yes.

    Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

    _____

    Estimate the part-time or reduced work schedule the employee needs, if any:

    _____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?  _____No  _____Yes.

    Is it medically necessary for the employee to be absent from work during the flare-ups?
    _____ No _____Yes. If so, explain:

    _____

    _____

    Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency         : _____ times per _____ week(s) _____ month(s)

    Duration: _____ hours or ___ day(s) per episode

ADDITIONAL INFORMATION:  IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

_____

_____

_____

_____

_____

_____

PART B: AMOUNT OF LEAVE NEEDED

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery?   ___No   ___Yes.

    If so, estimate the beginning and ending dates for the period of incapacity: _____

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition?   ___No   ___Yes.

    If so, are the treatments or the reduced number of hours of work medically necessary?
___No   ___Yes.

    Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

    _____

    Estimate the part-time or reduced work schedule the employee needs, if any:

    _____ hour(s) per day; _____ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?   ___No   ___Yes.

    Is it medically necessary for the employee to be absent from work during the flare-ups?
____ No ____Yes.  If so, explain:

    _____

    _____

    Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency          : _____ times per _____ week(s) _____ month(s)

    Duration: _____ hours or ___ day(s) per episode

ADDITIONAL INFORMATION:  IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____     _____
**Signature of Health Care Provider**                        **Date**

### PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT

If submitted. it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.  The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information. including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210.  **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Form WH-380-E  Revised  May 2015